HADLEY *vs.* FREEDMAN'S SAVINGS AND TRUST COMPANY.

October Term, 1874.

CORPORATION CREATED BY CONGRESS—FREEDMAN'S SAVING AND TRUST COMPANY.—The corporation, by the act of Congress of the 3d of March, 1865, "constituted a body corporate in the city of Washington, in the District of Columbia, by the name of the Freedman's Saving and Trust Company,"

was a local corporation of the District, but, as such, might do business in, this state.

SAME—DEPOSITORS.—The depositors had the right to come into the state courts for the enforcement of contracts made with the corporation, and to: proceed against it as a non-resident corporation; but could, after its insolvency, acquire no priority of satisfaction over other creditors of like grade.

SAME—STATUTORY ASSIGNMENT.—An assignment, by act of congress, of all the assets of the corporation' to commissioners would not, until duly regis-- tered under the laws of this state, prevent the depositors from proceeding against the corporation in this court, and reaching the property in this state..

*Guild & Dodd*, for complainants.
*John Lawrence*, for defendant.

THE CHANCELLOR :—The first of these bills is filed by a. depositor of the Freedman's Savings and Trust Company to, attach certain rents of realty in the hands of the company's agents, who are made co-defendants.   Attachment was ordered, issued, and levied.   The other bill is filed by similar depositors, asking for a like attachment.   The Savings Company has filed what is called a plea, answer, and demur- rer to the bill ; the plea being in effect that, previous to the filing of the bill, and in July, 1874, under the act of congress. of the 20th of June, 1874, the entire assets of the Freedman's Savings and Trust Company had been assigned and turned: over to three commissioners, naming them, who had been chosen and qualified in accordance with said act, and: accepted the trust and assumed the management of its. affairs.   The answer denies all fraud, and admits that the company owns in this city unencumbered real estate which cost $27,000, which is yielding a monthly rental, and holds. notes, secured by mortgage on real estate in this county, to, the amount of $7,000.  The demurrer is to the allegations of the bill upon which the prayer for attachment is based,. upon the ground that they are insufficient to sustain the attachment.

In this state of the pleadings the parties have agreed, in. writing, to submit to the court the question whether the complainants can, by the aid of this court, reach the property of the company in this state, and appropriate it to the:

payment of their deposits. And, in order to enable the court to decide the point submitted, they agree upon the following statement of facts:

1st. The plaintiff in the original bill is a depositor, as alleged by him, and payment of his deposits has not been made, although demanded. He made his deposit with the agreement that it should be paid him on demand.

2d. The bank (meaning the Savings Company) has become hopelessly insolvent, and creditors can only hope for a per cent. of their claims.

3d. Prior to the commencement of this suit all the assets of the bank were assigned to commissioners, appointed under an act of congress, and the trust had been accepted.

4th. It is the purpose of these commissioners to sell all the property of the bank in the state of Tennessee, and to remove all the proceeds of the sale, together with all the money due the bank, to Washington City, and then to make distribution thereof *pro rata* among all depositors.

5th. The bank has now in the hands of said assignees a large amount of unencumbered property in this state.

6th. The charter or act incorporating the Freedman's Savings and Trust Company is made a part of this agreement.

By an act of congress, passed on the 3d of March, 1865, certain persons named, and their successors, were " constituted a body corporate in the city of Washington, in the District of Columbia, by the name of the Freedman's Savings and Trust Company." The general business and object of the company, was, by the 5th section, declared to be to receive on deposit such sums of money as may from time to time be offered therefor, by or on behalf of persons heretofore held in slavery in the United States, or their descendants, and investing the same in state bonds, treasury notes, or other securities of the United States. Under this charter the principal institution seems to have organized and gone into operation at Washington, and established branches in various states, and, among others, in this state. The branch at Nashville, the answer and

agreed state of facts show, invested at least $27,000 of its funds in real estate, contrary to the express requirement of the 5th section of the charter as above quoted. The mort- gage securities taken, and held as admitted by the answers, were also without authority, unless taken since the amend- ment to the charter by act of congress of the 20th of June,. 1874. This amendment seems to have been passed with the double object, first, of modifying the mode of conduct- ing the business of the branches ; and, second, of enabling· the corporation to wind up its affairs, if advisable. By the: 7th section it is provided that, whenever deemed advisable· by the trustees, to close up its entire business, they shall select three competent men, not connected with the pre-- vious management of the institution, and approved by the secretary of the treasury, to be known and styled commis- sioners, whose duty it shall be to take charge of all the· property and effects of said Freedman's Savings and Trust, Company, close up the principal and subordinate branches,. collect from the branches all the deposits they have on hand, and proceed to collect all sums due said company, and dis-- pose of all the property owned by said company as speedily as the interests of the corporation require, and to dis-- tribute the proceeds among the creditors *pro rata*, according· to their respective amounts. After providing for the com-- missioners giving bond, with good security, before acting, this. section adds :   " And whenever said trustees shall file with the secretary of the treasury a certified copy of the order· appointing said commissioners, and they shall have executed bonds and taken the oath as aforesaid, then said commis- sioners shall be invested with the legal title to all of said property of said company, for the purposes of this act, and shall have full power and authority to sell the same, and make deeds of conveyance to any and all of the real estate· sold by them to the purchasers." The agreement of the· parties is loosely worded, but, I presume, it concedes that the commissioners have been appointed and qualified under· this section, and that they are invested with the legal title·

to all the property of the company, so far as the act of congress can invest them with such title. The agreement says that, prior to the commencement of the original suit, "all the assets of the bank were assigned to commissioners appointed under the act of congress, and the trust had been accepted." I presume that the assignment here spoken of is the assignment of the act of congress itself, and not any formal assignment by the company.

The original act of congress incorporating the Freedman's Bank and Trust company constitutes it a corporation "in the District of Columbia." It does not undertake to create a corporation for the Union, and it, therefore, becomes unnecessary to consider whether congress has the constitutional power to charter a corporation, in its capacity as the legislative body of the United States. There can be no doubt of its power to create local corporations for the District of Columbia.

In that view the corporation thus created might well do business, under the comity of nations, in any state in the Union in which the business was in other respects lawful. The ostensible object of the corporation was eminently laudable, and no reason occurs why the business conducted by it, within the purview of the charter, was not legal and proper. Nothing, therefore, stands in the way of any court, having jurisdiction, taking cognizance of the contract between the complainants and the corporation, as set out in the bill, and admitted in the answer and agreed facts, and enforcing it according to the laws of the land. The depositors have undoubtedly the right to come into court for the purpose of having the amount of their claims ascertained and adjudged, and subjecting any property of the corporation, if solvent, to the satisfaction of their debts. It is clear, also, that the corporation, being a non-resident of this state, within the meaning of our attachment laws, may be proceeded against by attachment of its property, in all proper cases, under our laws. Code, 3455, 4311, subsecs. 4 and 5; 4294, 4295, 3431.

If, therefore, there was nothing else in these cases except what appears on the face of the bills, the court would clearly have jurisdiction to issue the attachment and grant the relief prayed for. But it is suggested that insolvency of the corporation, and the assignment of its effects to commissioners, by and under the act of congress, deprive this court of jurisdiction; the first, because it precludes the complainants from acquiring any exclusive right to the property attached; and the second, because the title to the property is no longer in the corporation, and was not at the filing of the bill.

The insolvency of the corporation is admitted by the agreed case, and such insolvency, under our decisions, does work a change in the *status* of the corporation and its creditors, so far as the distribution of assets is concerned. The officers of a corporation, upon its insolvency, having control of its property and effects, become trustees, and hold the property for the benefit of creditors and claimants, in the order prescribed by law, if any, and, if none, then *pro rata* for all creditors and claimants. *Marr* v. *Bank of West Tennessee,* 4 Coldw. 471. The insolvency must, however, be clearly established before an adverse right accrues to work this effect. *Moseby* v. *Williamson,* 5 Heisk. 278, 286. And a court of equity, after such insolvency, will not allow one creditor, who stands upon the same ground as other creditors, to appropriate the common fund to his own benefit so as to exclude the others. *Marr* v. *Bank of West Tennessee,* 4 Coldw. 471; *Clark* v. *State,* 7 Coldw. 322.

The fact, however, that the creditor cannot acquire an exclusive right to the fund he is seeking to subject, does not prevent him from enforcing his rights to the extent of having his debt ascertained and adjudged, and charged upon the trust property as far as it can be—that is, to the extent of its *pro rata.* The creditor who thus impounds and secures the fund will, moreover, ordinarily be entitled to his reasonable costs and expenses incurred in securing the fund. *Rains* v. *Rainey,* 11 Humph. 261; *Ex parte Plitt,* 2

Wall. jr. 453.   I see nothing in the fact of the insolvency of the incorporation, in this case, to take it out of the general rule, or to deprive the complainants of the right to enforce their claims to the extent above indicated.   They are clearly entitled, so far as this objection is concerned, to prosecute their writs of attachment to judgment, and to have their rights, at least to a *pro rata* of the corporation funds, declared, and the property attached to that extent subjected to the satisfaction of their debts.   The insolvency of the Savings Company at the filing of the bill does not, therefore,. preclude the complainants from prosecuting their suits to a final decree.   It, at most, only limits the recovery to a *pro· rata* of the assets of the corporation.

The second objection of the defendant corporation is that the title to the property sought to be reached is not now,. and was not at the filing of the bill, in the corporation, but in the commissioners, under the act of congress.   If this were true, in fact and law, then it is clear that the attach- ment would fail for want of anything to operate upon, and, although the complainants might, upon the answer and. admission of the defendant, recover a decree for their debts,. yet the decree would be fruitless, because the property would not be subject to the order of the court, for want of the necessary parties before it.   In that view the court might refuse to proceed until the necessary parties were brought before it, or simply give the complainants a judg- ment against the corporation, leaving them to such further proceedings as they might be advised to take.   The latter would, doubtless, be the proper course, unless the complain- ants should themselves apply for leave to file a supplemental bill, to bring all the necessary parties before the court.

The agreed statement, according to the construction I have already put upon it, is that commissioners have been duly appointed and qualified under the act of congress, and the trust accepted by them, and, thereupon, by operation of law, the assets of the bank became assigned to the com- missioners.   It may be that there has been an actual assign-

ment by the corporation, and, if so, I will allow the statement to be corrected to show the facts. But, taking it that there has only been an assignment in law by the appointment, qualification, and acceptance of the commissioners, is that sufficient to prevent the depositors in this state from acquiring a lien on the property by attachment?

The learned counsel have not argued this question, nor undertaken to show me what is the legal effect of a statutory assignment upon the rights of third persons. This may depend upon general principles, or upon the laws of the District of Columbia. But, whatever may be its effects upon property in that district, it is clear that it can have none on property in this state (real property, certainly, and perhaps, personalty) until duly registered under our laws. Code, §§ 2030, 2072. If no formal assignment has been made by the corporation to the commissioners, duly proved and registered in this state, before the filing of these bills, then I am of opinion that the attaching creditors would acquire, by their attachments, a prior right to the property attached, over the commissioners. A corporation created by act of congress is still subject to the laws of the several states in the sale and transfer of property, acquired by it in those states, respectively, precisely like the citizens of the particular state. *McCullough* v. *Maryland*, 4 Wheat. 316. And certainly this would be so in the case of a corporation for the District of Columbia, created only by virtue of the power of congress, as the legislature of the district. The statutory assignment, therefore—even admitting its validity as to all property in the District of Columbia—presents no obstacle to the relief sought by these complainants as against the property in this state. 5 Wall. 307; 7 id. 139.

The citizens of this state, who have become creditors of the Freedman's Savings and Trust Company by dealings with its branch at Nashville, are clearly entitled to come into the courts of the state for the purpose of having their rights against this company declared, and subjecting its property in this state to the satisfaction of their debts.

9

The government in which property is situated will never extend its comity so far as to prejudice its own citizens, no matter what may be the laws of its owner's domicile. *Gilchrist* v. *Cannon*, 1 Coldw. 581 ; *Allen* v. *Bain*, 2 Head, 106.

As it is obvious, however, that complainants will not be entitled to more than their *pro rata* share of the assets of the corporation, either by the state law or under the act of congress, and as they cannot legally ascertain their *pro rata* without having other claimants before the court, I suggest to the counsel of complainants that they file an amended and supplemental bill, as well for themselves as for all other creditors and claimants who may choose to come and make themselves parties complainant, and make the commissioners parties defendant, and, while claiming satisfaction out of the assets in this state, ask for all proper accounts, that the property be sold under the order of this court, that a receiver be appointed if necessary, and for general relief. Upon such a bill, as well as upon the bill already filed, the complainants would be entitled to fiats of attachment and injunction, upon executing bonds as required by law. Whether the depositors in this state might not elect to take the property here to the exclusion of foreign depositors, may be left for further consideration.